Opinion of the Court by Sandstrom, Justice.
[¶ 1] T.F. James Company ("James") appeals from the district court's amended judgment denying James' request for attorney fees. We reverse and remand, concluding the district court abused its discretion by denying attorney fees. On remand, we direct the district court to award James reasonable attorney fees consistent with this opinion.
 I [¶ 2] James owns and operates the Jamestown Mall in Jamestown, North Dakota. Luella Vakoch leased space in the mall for her salon, New Images. Vakoch abandoned the lease, and James sued. At trial, the district court concluded Vakoch had breached the lease. The court held in favor of James on all claims, but the court determined the lease agreement was usurious. James appealed to this Court. We reversed, concluding the lease agreement was not usurious. T.F. James Co. v. Vakoch, 2000 ND 9, ¶ 1,604 N.W.2d 459.
 [¶ 3] In the lease, Vakoch agreed to pay James' attorney fees if she breached terms of the lease. Discussing the issue of attorney fees in the earlier appeal, we said:
 James argues the district court should have awarded attorney's fees as provided in the lease. According to the lease, Vakoch was to pay for any expenses including attorney's fees expended in litigation by James if a breach by Vakoch was established. The district court declined to award James the attorney's fees for four reasons: 1) There was a *Page 300 
legitimate issue regarding whether James may have breached the lease by allowing a third beauty shop to come into the mall; 2) the lease was usurious; 3) the fact the lease provided for recovery by the landlord if the tenant breached, but did not provide for recovery by the tenant if the landlord breached; 4) the totality of the circumstances demonstrated recovery of attorney's fees would result in an inequitable and absurd recovery by James when the court has found James subject to usury laws.
Id. at ¶ 11. We concluded, "On remand, the district court is to reconsider its decision not to award James attorney fees in light of the fact the lease is not usurious." Id. at ¶ 12. On remand, the district court denied fees, and James now appeals.
 [¶ 4] The district court had jurisdiction under N.D.C.C. §27-05-06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-27-01.
 II [¶ 5] On remand, the district court applied N.D.C.C. § 28-26-04 to the lease agreement to conclude the contract provision for attorney fees violated public policy and was therefore void. A district court's decision regarding attorney fees will not be set aside on appeal, absent an abuse of discretion. Fode v. CapitalRV Center, Inc., 1998 ND 65, ¶ 34, 575 N.W.2d 682. A district court abuses its discretion when it acts in "an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." Berg v. Berg, 2000 ND 37, ¶ 10,606 N.W.2d 903.
 A [¶ 6] Generally, parties may freely enter into an agreement for payment of attorney fees in a civil action. N.D.C.C. §28-26-01(1). In some cases, agreements to pay attorney fees are void and against public policy. Representative is N.D.C.C. §28-26-04, which provides:
 Attorney's fee in instrument void. Any provision contained in any note, bond, mortgage, security agreement, or other evidence of debt for the payment of an attorney's fee in case of default in payment or in proceedings had to collect such note, bond, or evidence of debt, or to foreclose such mortgage or security agreement, is against public policy and void.
Relying on this statute, the district court concluded the lease agreement was "other evidence of debt" and therefore void. In reaching its conclusion, the district court stated:
 The document in question in this case is a commercial lease of real property. It is a very detailed lease, consisting of 53 different paragraphs and 28 pages. The lease provides the legal basis for which rents and other amounts due become payable. The lease provides a basis for specific payments from the tenant to the landlord in return for the landlord providing the property to the tenant. The lease provides for a minimum rent in ¶ 3 on an annual basis payable in equal monthly installments. It further provides for a contracted rate of interest when the tenant fails to pay when due any rent or additional rent. In addition, the lease provides for other payments, including common area and common expense charges in ¶ 9. That provision also provides for late fees and interest if not paid when due. Clearly the lease agreement is an instrument which is the landlord's evidence that there is a debt from the tenant. The tenant is agreeing to pay certain amounts of money and the landlord is now using that instrument as evidence of debt to collect the debt including late fees and interest at a contracted *Page 301 
rate. This is similar to the purpose of notes, bonds, mortgages, and security agreements. Black's Law Dictionary, 7th Edition, defines a debt to be a liability on a claim; a specific sum of money due by agreement or otherwise. In this case, there is no dispute that the lease constitutes "evidence of a debt" which the tenant must pay in full or be in breach of the lease.
 N.D.C.C. § 28-26-04 rather than 28-26-01(1) is controlling since the Court finds the lease in this case constitutes "evidence of debt". Thus, the provision in the lease providing for the payment of attorney's fees in case of default in payment is against public policy and void. Accordingly, the Court on reconsideration declines to award James attorney's fees in this case since an award of attorney's fees would be a violation of N.D.C.C. § 28-26-04.
 [¶ 7] This Court has evaluated N.D.C.C. § 28-26-04 in numerous contexts. See Principal Residential Mortgage, Inc. v. Nash,2000 ND 21, ¶ 26, 606 N.W.2d 120 (mortgages); Production Credit Ass'nv. Obrigewitch, 462 N.W.2d 115, 118 (N.D. 1990) (loan agreements);Commercial Bank of Mott v. Stewart, 429 N.W.2d 402, 403 (N.D. 1988) (retail installment contract); Farmers Union Oil Co. v.Maixner, 376 N.W.2d 43, 48-49 (N.D. 1985) (personal guarantee); and Hartford Accident and Indemnity Co. v. Anderson,155 N.W.2d 728, 735-36 (N.D. 1968) (indemnity agreement). Although this Court has never decided whether a commercial lease constitutes evidence of a debt, we find instructive the interpretations of "evidence of debt" or similar language in other jurisdictions. Some jurisdictions have concluded a lease is evidence of debt, but their conclusions allowed, rather than disallowed, attorney fees.See, e.g., Holmes v. Bogino, 467 S.E.2d 197, 198-99 (Ga.Ct.App. 1996) (commercial lease was evidence of indebtedness allowing enforcement of agreement to pay attorney fees); StillwellEnterprises, Inc. v. Interstate Equip. Co., 266 S.E.2d 812, 817-18
(N.C. 1980) (lease agreement was evidence of indebtedness allowing imposition of attorney fees); see also Squyres Constr. Co., Inc.v. Chemical Bank, 596 S.W.2d 283, 284 (Tex.Civ.App. 1980) (a lease is evidence of debt for purposes of transacting business under the Texas corporations code). We, however, are guided by the majority of decisions providing a narrower rather than a more expansive interpretation of what constitutes evidence of debt.
 [¶ 8] In Columbus Southern Ohio Elec. Co. v. Peck,118 N.E.2d 142, 145 (Ohio 1954), the Ohio Supreme Court concluded personal leases do not fall within the same general classification as "bonds, certificates of indebtedness, debentures and notes; certificates of deposit, . . . and other similar evidences ofindebtedness." In its decision the court stated:
 The enumerated items are clearly property, of an intangible nature, in which money is invested and from which a return in money is received. Under the familiar rule of ejusdem generis the words, "and other similar evidences of indebtedness," must be construed as including only items of intangible property of the same class, kind or nature.
 A lease of one's own personal property to another for a stipulated rental is not of the same class, kind or nature as any of the enumerated items of intangible property. The lessor does not part with money. He does not transfer title. He continues to own his property and pay property taxes thereon. A lease of personal property is not an "evidence of indebtedness" similar to those enumerated above.
Id.
 [¶ 9] In Hiller v. Olmstead, 54 F.2d 5, 7 (6th Cir. 1931), the court interpreted *Page 302 
Michigan law allowing creation of an estate by the entireties in "all bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness." At issue was whether an insurance contract, after a fire, was converted into evidence of indebtedness. The court stated:
 The argument presented is that immediately upon the happening of loss the policy of insurance was converted from a simple contract into an "evidence of indebtedness". . . . Not only would the happening of an event which created contract liability not convert such contract into an "evidence of indebtedness" if it had not such character before, thus changing its very nature, but it is manifest that the words "evidence of indebtedness," as used in the statute, refer only to instruments of the same general nature as bonds, mortgages, notes, and debentures with which they are associated. The maxim noscitur a sociis applies.
Id. Noscitur a sociis is "[a] canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." Black's Law Dictionary
1084 (7th ed. 1999).
 [¶ 10] In O'Brien's Irish Pub, Inc. v. Gerlew Holdings, Inc.,332 S.E.2d 920 (Ga.Ct.App. 1985), the court interpreted a contract for sale of a business in which the vendor agreed to pay attorney fees if the broker had to bring legal action to enforce the contract. Under Georgia law, "[o]bligations to pay attorney fees upon any note or other evidence of indebtedness" required compliance with notice requirements. Id. at 923. Interpreting the provision, the court stated:
 [W]e reject appellants' argument that the section applies to every contract. Black's Law Dictionary, Deluxe 4th Ed., 1968, defines "evidence of debt" as "[a] term applied to written instruments or securities for the payment of money, importing on their face the existence of a debt." The word "note" has been defined . . . "as a written paper acknowledging a debt and promising payment."
 The contract at issue in this case does not fall within those definitions. We hold, therefore, that this contract . . . is not a "note or other evidence of indebtedness. . . ."
Id. (citations omitted).
 [¶ 11] Although the lease agreement in this case was in writing, it is not an "instrument." See N.D.C.C. §§ 41-03-03 and41-03-04 (defining instrument); see also N.D.C.C. § 28-26-04
(indicating attorney fees in an instrument are void). Courts have recognized some documents are not evidence of debt if the documents fail to meet the definition of a note, bond, or other instrument. See, e.g., In Re Dvorak, 176 B.R. 929, 934
(Bankr.D.Kan. 1994) (stating an indemnity agreement is not evidence of indebtedness and does not meet the definition of note or bond).
 [¶ 12] We agree with the district court that the lease agreement set forth an agreement promising payment from the lessee to the lessor. We, however, do not believe "evidence of debt" in N.D.C.C. § 28-26-04 is intended "to be viewed as a catchall rubric embracing any and all writings, not otherwise specifically listed, which represent an obligation on the part of the writer to do something for the holder." See United States v. Jones,450 F.2d 523, 524 (5th Cir. 1971) (construing the term "evidence of indebtedness" in the context of its entire definition); see alsoid. (indicating commercial airline tickets, although redeemable for cash, are not evidence of indebtedness).
 [¶ 13] A commercial lease is distinguishable from a mortgage, security *Page 303 
agreement, bond, note, or loan agreement. The state constitution or statutes define whether a contractual provision is against public policy. Johnson v. Peterbilt of Fargo, Inc., 438 N.W.2d 162,163 (N.D. 1989). If the legislature chooses to declare that attorney fee provisions in commercial lease agreements violate public policy, it may do so. In the absence of legislative or constitutional direction to the contrary, we decline to expansively interpret public policy to void attorney fee agreements in commercial leases.
 B [¶ 14] In reaching its conclusion, the district court relied extensively on this Court's decision in Farmers Union Oil Co. v.Maixner, 376 N.W.2d 43 (N.D. 1985). The district court misinterpreted this Court's opinion. Specifically, in FarmersUnion, there was no express agreement to pay attorney fees; attorney fees were based on a personal guarantee to pay expenses "incurred . . . as a result of non-payment of said credit account when due." Id. at 48. More importantly, this Court concluded "evidence of debt" includes a personal guarantee because the guarantee relates to "payment of debt." Id. at 49.
 [¶ 15] In this case, the lease agreement — unlike a personal guarantee — set forth the terms, conditions, and obligations of the lessor and lessee. A lease agreement is not transformed into "evidence of debt" simply because one of its terms requires a party to pay attorney fees if that party fails to honor the lease conditions. See Hiller v. Olmstead, 54 F.2d 5, 7 (6th Cir. 1931) (insurance contract not converted to evidence of indebtedness by a fire). In each of this Court's cases declaring an attorney fee provision to have violated public policy under N.D.C.C. §28-26-04, there existed a written note, mortgage, or guarantee to pay a debt. If we were to embrace the district court's expansive interpretation of "evidence of debt," virtually anything could demonstrate evidence of debt. See, e.g., United States v. Jones,450 F.2d 523, 524 (5th Cir. 1971) (concluding an airline ticket, although redeemable for cash, does not amount to "evidence of indebtedness").
 [¶ 16] We are guided by the jurisdictions cited above and by our prior interpretations of what constitutes evidence of debt. We hold that "evidence of debt," as contemplated by N.D.C.C. §28-26-04, relates to a written instrument importing on its face the existence of debt, an acknowledgment of that debt, and a promise of payment. The general term, "evidence of debt," "despite its seeming breadth," includes only instruments similar to those specifically listed in N.D.C.C. § 28-26-04: a note, bond, mortgage, or security agreement. See Black's Law Dictionary
535 (7th ed. 1999) (discussing the principle of ejusdem generis, and stating "seeming breadth" is not given effect). Evidence of debt is not a "catchall rubric embracing any and all writings" including those such as the commercial lease agreement in this case. Jones, 450 F.2d at 524.
 III [¶ 17] James argues the district court is "subconsciously biased" and therefore a new judge should be assigned on remand. The district court's deciding the issue on remand based on "evidence of a debt" is troubling. On remand, the parties did not argue the theory, nor did the district court raise it at oral argument. The transcript of oral argument reflects James' statement, "[w]e're not talking about evidence of indebtedness," a statement not disputed by Vakoch. The district court twice wrongly denied attorney fees, so we understand the basis of James' argument for change of judge; but we are confident *Page 304 
the district court, on remand, will fairly decide the matter consistent with our instructions.
 A [¶ 18] Although this Court may assign a case to a different judge on remand, we decline to do so in this instance. The purpose of reassignment is, in part, to preserve the integrity of the court, to protect litigants from bias, and to ensure that allegations of prejudice do not affect fair administration of the law. See Blomquist v. Clague, 290 N.W.2d 235, 240 (N.D. 1980) (granting a change-of-judge request based on allegation of prejudice). Because the district court did not award attorney fees, we realize the factual findings regarding the amount and nature of fees to be awarded in this case remains undetermined. We also recognize the absence of these findings supports reassignment. See All Seasons Water Users Ass'n, Inc. v. NorthernImprovement Co., 417 N.W.2d 831, 833 (N.D. 1988) (reassignment allowed for factual determination).
 [¶ 19] Determining whether or not to assign a different judge requires delicate balancing of numerous competing interests. Having presided throughout the course of the extensive proceedings in this case, the district court judge has particular insight that cannot be replicated by a replacement. The voluminous nature of the record, the sheer number of proceedings, and the experiences of the presiding judge favor retention rather than reassignment. Retention is also favored in this case because the allegations are of "subconscious bias," not actual bias.
 [¶ 20] The district court may have been confused by the conciliatory language of our earlier opinion. T.F. James Co. v.Vakoch, 2000 ND 9, ¶ 1, 604 N.W.2d 459 (directing the district court to "reconsider its decision" not to award attorney fees, instead of directing it to do so). We now provide explicit direction to the district court. On balance, the trial judge's familiarity with the case, our explicit instructions, and the "subconscious" nature of any alleged bias favor retention rather than reassignment. We believe this course preserves the integrity of the court and ensures fairness to the parties.
 B [¶ 21] The district court shall award reasonable attorney fees to James on remand. As agreed by the parties, the fees shall include "all expenses incurred" to recover rent "or any other amount due" under the lease, including "reasonable attorney's fees, costs and disbursements." To the extent not previously awarded, the district court shall award all reasonable attorney fees and costs to recover rent or other amounts due, in the trial court and on appeal, including attorney fees and costs for preparing pleadings, conducting discovery, responding to discovery, preparing motions and briefs, and all other things necessary. Because James was required to appeal twice to enforce the agreement, the reasonable costs and attorney fees associated with both appeals shall be awarded by the district court.
 [¶ 22] Counsel for James suggests the district court may be reluctant to award costs and fees resulting from the court's own abuse of discretion. Our clear mandate, however, is that the district court shall award all reasonable costs and attorney fees.
 [¶ 23] To guide the district court in determining the reasonableness of the fees it shall award, we identify the factors in N.D.R.Prof. Conduct 1.5(a):
 (1) the time and labor required, the novelty and difficulty of the questions involved, *Page 305 
and the skill requisite to perform the legal service properly;
 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
 (5) the time limitations imposed by the client or by the circumstances;
 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
This Court has uniformly held that when determining the reasonableness of attorney fees, all factors must be considered and no single factor controls. In determining fees on remand, the district court shall first decide the number of hours reasonably expended, and then determine a reasonable hourly rate. See Cityof Medora v. Golberg, 1997 ND 190, ¶¶ 19-22, 569 N.W.2d 257
(applying the "lodestar" method rather than proportionality of fees to the verdict); see also City of Bismarck v. Thom,261 N.W.2d 640, 646 (N.D. 1977) (identifying the manner of calculation, identifying total hours and rate per hour as "predominate," and stating evidence and specific findings are necessary); and Hughes v. North Dakota Crime Victims ReparationsBd., 246 N.W.2d 774, 777 (N.D. 1976) (identifying "the undesirability of the case" and "awards in similar cases"). After this analysis, the fees shall not be reduced based on any other factor.
 IV [¶ 24] We reverse the district court's amended judgment and remand for an award of reasonable attorney fees consistent with this opinion. James' request for assignment of a different district court judge on remand is denied.
 [¶ 25] Dale V. Sandstrom, William A. Neumann, Mary Muehlen Maring, Carol Ronning Kapsner, Gerald W. VandeWalle, C.J.