MEIERHENRY, Justice
(concurring specially).
[¶ 34.] I concur. I write only to point out some of the problems that this case raises concerning attorney representation in the underlying litigation. Initially, both parties in this action — Wilcox and Vermeu-len — were represented by the same attorneys. Those attorneys instituted lawsuits against the aircraft companies and other defendants. Their representation of both Wilcox and Vermeulen appears to be in direct conflict with Rule 1.7 of the South Dakota Rules of Professional Conduct. Rule 1.7 provides:
(a) Except as provided by paragraph
(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer’s responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same liti *474 gation or same matter before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.
SDCL 16-18 App., Rules of Prof. Conduct, Rule 1.7 (emphasis added).
[¶ 35.] A conflict of interest exists if “there are substantially different possibilities of settlement of the claims or liabilities in question.” Id. cmt. 23. Additionally, as the comment to this Rule indicates, some conflicts prohibit concurrent representation and are “nonconsentable.”
Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client’s position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding.
Id. cmt. 17. Based on the issues now before us concerning the division of the trust, a real question exists as to whether the original lawyers were able to “vigorously develop each client’s position in the same litigation or other proceeding before a tribunal.” The original lawyers settled in the midst of trial, took their fees— totaling over $1,657,500 — and left the widows and children to fight over the settlement balance of $1,625,000 placed in the trust. As a result, the parties had to hire new lawyers to litigate the division of the trust. I point this fact out in an attempt to identify the source of the conflict in this case rather than just the symptom.
[¶ 36.] GILBERTSON, Chief Justice, joins this special writing.
SABERS, Retired Justice (concurring in part and dissenting in part).
[¶ 37.] I dissent on Issue I and concur on Issue II. I dissent because a decision based on an error of law is, by definition, an abuse of discretion. Credit Collection Servs., Inc. v. Pesicka, 2006 SD 81, ¶ 5, 721 N.W.2d 474, 476 (citation omitted). The application of judicial estoppel is a mixed question of fact and law we review de novo. Watertown Concrete, 2001 SD 79, ¶ 11, 630 N.W.2d at 112 (citation omitted). The trial court erred as a matter of law in applying judicial estoppel to the facts of this case to deny Vermeulen’s motion to admit expert testimony. This decision was based on an error of law and it was an abuse of discretion.
[¶ 38.] 1. The trial court erred in applying judicial estoppel and in denying Vermeulen’s motion to offer additional expert testimony.
[¶ 39.] The trial court ruled that Ver-meulen was judicially estopped from offering a different expert. This Court has considered the following factors in deciding whether to apply judicial estoppel:
[T]he later position must be clearly inconsistent with the earlier one; the earlier position was judicially accepted, creating the risk of inconsistent legal determinations; and the party taking the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opponent if not es-topped.
Canyon Lake Park, 2005 SD 82, ¶ 34, 700 N.W.2d at 737 (emphasis added) (citations omitted).

Vermeulen’s Position is Not Clearly Inconsistent

[¶ 40.] It is clear that Vermeulen did not take the position that Frankenfeld would be the sole expert for apportionment purposes. The co-plaintiffs hired one expert for three wrongful death actions that were ultimately settled out-of- *475 court. This does not mean that Vermeu-len took the position during those trials that Frankenfeld, the sole expert for trial, would also provide the exclusive testimony for apportionment purposes. In fact, the settlements failed to apportion the money among the beneficiaries or estates according to Frankenfeld’s testimony. That failure suggests that apportionment of the settlements would not be based on the sole testimony of Frankenfeld. Based on these facts, and the fact that Frankenfeld omitted all non-eeonomic loss analysis and economic loss analysis as to Vermeulen’s children, Vermeulen did not assert a dearly inconsistent position by offering expert opinion.

The Trial Court Erred in Ruling Ver-meulen’s Position was Judicially Accepted and the Majority Opinion Affirms that Error

[¶ 41.] Vermeulen claims that even if a “clearly inconsistent” position was asserted during the trials leading to settlement, any earlier position was not “judicially accepted.” While we have yet to define the contours of “judicially accepted” under the judicial estoppel doctrine, it appears that neither party’s positions were judicially accepted in this case.
[¶ 42.] The judicial acceptance element requires inquiry into “whether the party has succeeded in persuading a court to accept that party’s earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create ‘the perception that either the first or the second court was misled[.]’ ” New Hampshire v. Maine, 532 U.S. at 750, 121 S.Ct. 1808 (citation omitted), cited with approval in Watertown Concrete, 2001 SD 79, ¶ 12, 630 N.W.2d at 112-13. The law is unsettled as to what constitutes success in achieving judicial acceptance.
[¶ 43.] One view “hold[s] that [judicial estoppel] is inapplicable unless the inconsistent statement was actually adopted by the court in the earlier litigation; only in that situation ... is there a risk of inconsistent results and a threat to the integrity of the judicial process.” Morris v. State of Cal., 966 F.2d 448, 453 (9th Cir.1991) (citations omitted). The opposing view holds that judicial estoppel “applies even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing ‘fast and loose’ with the court.” Id. (citations omitted). Clearly, judicial estoppel is more appropriate when a court has adopted a prior position or statement because only then is there a clear risk of inconsistent results which threatens the integrity of the judicial process.
[¶ 44.] Our case law reflects that judicial acceptance of a party’s underlying theories or claims through prior legal determinations is required to apply judicial estoppel. See State ex rel. White v. Brandt, 2008 SD 33, ¶¶ 20-21, 748 N.W.2d 766, 772-73 (noting that assertion of paternity was judicially accepted through' a guilty plea for failure to pay child support and also through Brandt’s request for modification of child support obligation); Canyon Lake Park, 2005 SD 82, ¶ 37, 700 N.W.2d at 738 (noting that a position was not judicially accepted because it was not relied upon by the Board in making the decision); Foster v. Foster, 2003 SD 151, 118, 673 N.W.2d 667, 672-73 (applying judicial estoppel and noting an inconsistent position was judicially accepted in pri- or bankruptcy adjudication); Watertown Concrete, 2001 SD 79, ¶ 10, 630 N.W.2d at 112 (noting judicial estoppel was only applicable “when a party successfully maintains a certain position in a legal proceeding” (emphasis added)); Gregory v. Solem, 449 N.W.2d 827, 832 n8 (SD 1989) (applying judicial estoppel to a trial tactic decision that was accepted in a previous rul *476 ing). The issue is whether the Sheesley, Vermeulen, Bielstein settlement constituted a legal determination or judicial acceptance of the parties’ prior positions.[8]
[¶ 45.] In Konstantinidis v. Cheng Nan Chen, 626 F.2d 933, 938-39 (D.C.Cir.1980), the court stated: “A settlement neither requires nor implies any judicial endorsement of either party’s claims or theories, and thus a settlement does not provide the prior success necessary for judicial estoppel.” See E. Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623, 664 N.E.2d 446, 448 (1996) (same); Vowers & Sons, Inc., v. Strasheim, 254 Neb. 506, 514-15, 576 N.W.2d 817, 824 (1998) (same); Mainor v. Nault, 120 Nev. 750, 766, 101 P.3d 308, 319 (2004) (same); Commercial Ins. Co. of Newark v. Steiger, 395 N.J.Super. 109, 116, 928 A.2d 126, 130 (2007) (same). These cases are persuasive authority that a settlement often lacks the necessary judicial acceptance to invoke judicial estoppel. In this case, Vermeulen, Sheesley, and Bielstein settled out-of-court for a sum of money which was approved by the respective courts. These settlements and approvals were void of any legal determinations as to the merits of the case, the underlying weight given to each piece of evidence in reaching the settlement amount, or any determination as to positions asserted during the trial. In this situation, without a legal determination, it would be improper to claim Vermeulen is playing fast and loose with the courts or is “perverting the judicial machinery.” Canyon Lake Park, 2005 SD 82, ¶ 34, 700 N.W.2d at 738 (citation omitted).

The Trial Court Gave Lip Service to the Wrongful Death Statutes and then Ignored Them

[¶ 46.] Wilcox argues the apportionment hearing must be based on the evidence presented at the wrongful death trials because the settlement amount was agreed to in reliance on that evidence. In response, Vermeulen asserts that the prior action was not adversarial between co-plaintiffs or between each statutory beneficiary, but the apportionment hearing was, and therefore, additional competing evidence was required.
[¶ 47.] Wilcox’s reliance on the evidence presented at trial as conclusive for purposes of apportionment is misguided. Because the beneficiaries did not adjust among themselves the portion each was to take under SDCL 21-5-8, the court was charged with the responsibility of apportioning this settlement. Id. In so doing, the apportionment court was not bound by the evidence used to ascertain the settlement or jury award; rather, it was required to apportion “among the beneficiaries” in a “manner as shall be fair and equitable, having reference to the age and condition of such beneficiaries.” Id. Therefore, any reliance by Wilcox that the apportioning court would consider only the evidence presented at the wrongful death hearings is misplaced and unreasonable. Because the reliance element is lacking, neither promissory nor equitable estoppel apply.[9]
*477 [¶ 48.] Despite Wilcox’s assertion, statutory beneficiaries are not “required to participate in the wrongful death action in order to protect [their] interest in the proceeds.” In re Estate of Howe, 2004 SD 118, ¶ 26, 689 N.W.2d 22, 29. Therefore, statutory beneficiaries will often benefit from the testimony offered at the wrongful death trial to the detriment of the pérsonal representative in whose name the action was brought. Moreover, estoppel is a doctrine of equity “founded upon principles of morality and fair dealing.” Weaver v. Bauer, 76 S.D. 401, 406, 79 N.W.2d 361, 364 (1956). In this case, fair dealing would dictate that the Vermeulen beneficiaries not be required to challenge their own expert at trial. When settlement awards are less than the sum of the separate claims, beneficiaries have competing interests in the settlement fund. Corder v. Corder, 41 Cal.4th 644, 658, 61 Cal.Rptr.3d 660, 161 P.3d 172, 181 (Cal 2007). SDCL 21-5-8 presupposes those competing interests between beneficiaries of wrongful death awards or settlements by requiring judicial apportionment if the award or settlement is not adjusted among themselves. “And quite obviously, competing interests cannot be adjudicated unless litigants are entitled to challenge their adversary’s position.” [10] Corder, 41 Cal.4th at 658, 61 Cal.Rptr.3d 660, 161 P.3d at 181 (emphasis added).
[¶ 49.] Based on the foregoing, judicial estoppel is inapplicable because even if Vermeulen took an inconsistent position, this out-of-court settlement did not constitute judicial acceptance of any position by either plaintiff. Therefore, the trial court erred as a matter of law in applying judicial estoppel to deny Vermeulen’s request to offer expert testimony. As noted above, a decision based on an error of law is, by definition, an abuse of discretion. Credit Collection. Servs., 2006 SD 81, ¶ 5, 721 N.W.2d at 476 (citation omitted). The majority opinion acknowledges that judicial estoppel is not proper and hints, without proof, that promissory or equitable estop-pel applies. However, any estoppel based on Wilcox’s reliance that the evidence offered at the wrongful death trials would be the only evidence considered at the apportionment hearing would also be error. The apportioning court is not bound to the evidence submitted at the wrongful death trials, and is required to apportion in a “fair and equitable” manner. SDCL 21-5-8. The majority opinion does an end run around this clear abuse of discretion by reasoning that we must affirm whether estoppel was appropriate or not because no offer of proof was provided and prejudice was not shown.

An Offer of Proof was Not Necessary and Prejudice is Obvious

[¶ 50.] The majority opinion states, “In addition to showing an abuse of discretion, [Vermeulen] must show that the excluded evidence might and probably would have resulted in a different verdict,” Thompson, 2005 SD 69, ¶ 21, 698 N.W.2d at 520 (citation omitted), and that “[Vermeulen] must make the substance of the evidence known to the trial court by making an offer of the excluded evidence at trial or prior to trial by an offer of proof.” Id., (citations omit *478 ted). Supra ¶ 7. However, no offer is necessary when “the substance of the evidence [is] apparent from the context[.]” SDCL 19-9-3(2) (Rule 103(a)).
[¶ 51.] In this case, the substance of Vermeulen’s expert evidence was apparent from the context. The trial court knew the substance of Vermeulen’s expert evidence from the context because of the dialogue at the motion hearing and Ver-meulen’s brief in support of the motion. During the hearing on the motion for leave to present expert testimony, Vermeulen’s counsel specifically argued that Franken-feld did not consider economic damages to Karla and Ryan Vermeulen and “did not look at apportionment in any manner.” Further, Vermeulen’s counsel stated that a prior summary by joint counsel points out that “Mr. Frankenfeld overestimated Shane Sheesley’s wages.” Vermeulen’s counsel then stated, “[These] points alone should allow my client to have a separate analysis for purposes of helping or assisting [] this court in apportioning all the damages.” Vermeulen’s counsel also stressed at the motion hearing that there is no testimony as to non-economic damages. These arguments were also put forth in Vermeulen’s brief in support of the motion. From the dialogue at the motion hearing and the brief in support of the motion, the substance of Vermeulen’s expert evidence was apparent from the context and known by the trial court. Vermeulen clearly intended to offer expert testimony as to economic and non-economic loss to the parties and to challenge Frankenfeld’s opinion as to Sheesley’s earning capacity. Therefore, because this substance was apparent from the context, no offer of proof was necessary. SDCL 19-9-3(2).
[¶ 52.] Moreover, the trial knew the substance of Vermeulen’s expert evidence because the trial court based its ruling on judicial estoppel. In order to apply judicial estoppel, the trial court must have known the substance of both the prior testimony and the offered testimony. Without knowing both, the trial court would not be able to determine if the offered evidence was inconsistent. Therefore, because the trial court applied judicial estoppel in this case, it must have known the substance of Vermeulen’s expert evidence.
[¶ 53.] The majority notes that Ver-meulen must also “show that the excluded evidence might and probably would have resulted in a different verdict.” Thompson, 2005 SD 69, ¶ 21, 698 N.W.2d at 520 (citation omitted). In the subsequent apportionment hearing after the wrongful death trials, it was clear that beneficiaries had competing interests in the settlement fund. See Corder, 41 Cal.4th at 658, 61 Cal.Rptr.3d 660, 161 P.3d at 181. As noted above, “competing interests cannot be adjudicated unless litigants are entitled to challenge their adversary’s position.” Id. (emphasis added). The trial court erroneously adjudicated Vermeulen’s competing interests without allowing Vermeulen to challenge Wilcox’s position through expert testimony. This alone shows that the excluded evidence might and probably would have resulted in a different verdict and definitely would have helped the trier of fact apportion the settlements in a “fair and equitable” manner.
CONCLUSION
[¶ 54.] The trial court erred as a matter of law in applying judicial estoppel to Vermeulen’s request to offer expert testimony. Therefore, the trial court abused its discretion. Credit Collection Servs., 2006 SD 81, ¶ 5, 721 N.W.2d at 476 (a decision based on an error of law is, by definition, an abuse of discretion) (citation omitted). In addition to showing an abuse of discretion, the record satisfies the majority opinion’s concerns as to the sub *479 stance of the evidence and prejudice. Because the substance of Vermeulen’s expert evidence was apparent from the context, i.e., the dialogue at the motion hearing, briefs in support of the motion, and the trial court’s application of judicial estoppel, an offer of proof was not necessary. SDCL 19-9-3(2). Furthermore, we should not penalize co-plaintiffs in wrongful death actions by requiring them to cross-examine their own expert during trial. Because the prior co-plaintiffs now have a competing interest in the settlement fund, they were prejudiced by not being allowed to challenge their adversary’s position through expert testimony at the apportionment hearing. Therefore, the trial court abused its discretion by precluding competing expert testimony. Without expert testimony it would be impossible to find compliance with the wrongful death statutes which require a “fair and equitable” apportionment among beneficiaries. SDCL 21-5-8.
[¶ 55.] For these reasons, I respectfully dissent on Issue I. I would reverse the trial court and remand for a new apportionment hearing in which any statutory beneficiary could offer additional expert testimony.

. Wilcox and the trial court relied on Warren Supply Co. v. Dueir, Pliley, Thorsheim Dev., Inc., 355 N.W.2d 838 (S.D.1984), for the proposition that settlements qualify as being judicially accepted. In that case, however, this Court upheld the application of judicial estoppel to a position taken in a stipulation which was incorporated into a judgment by the trial court. That case resulted in a settlement whose underlying theories and positions were judicially accepted by the court through the entry of judgment which included the stipulations. Therefore, Wilcox finds no support in that case.

. Additionally, promissory estoppel does not apply in this situation because Wilcox has not come forward with sufficient evidence that *477 Vermeulen promised to use only one expert for trial and apportionment.

. By Wilcox's own stipulations, they have conceded that Vermeulen may put forth arguments contrary to their purported position at trial. The December 11, 2008, stipulation number 7 states: “This Stipulation does not preclude the parties’ ability to argue any points regarding the testimony.” This further evidences that estoppel is unwarranted in this case. We should not hold that beneficiaries can argue adverse positions during apportionment but cannot present testimony supporting their arguments.